DowNet, Judge,
delivered the opinion of the court:
The plaintiff, under a special jurisdictional act approved June 7,1924, 43 Stat. 644, sues for an unexpended balance of $48,823.61 out of an appropriation of $95,000, made by a provision in the Indian appropriation act of May 18, 1916, 39 Stat. 123, and quoted in Finding VII.
The relations between the plaintiff tribe and the United States, so far as material, and the circumstances leading up to this appropriation are quite fully set out in the findings *479 and will not be repeated here except as the discussion may necessitate.
It is alleged in the petition that the Indians who were erroneously excluded from the enrollment under the act of 1871 were restored to the rolls under the act of 1893 and that the appropriation of $95,000 was made to restore to the funds of the tribe the amount paid to the citizens in excess of their true share, said appropriated sum including the interest on such excess to March 3, 1893, and that “ as of March 3, 1893,” there remains in the Treasury $48,823.61 of said $95,000.
In plaintiff’s brief it is contended that the act of May 18, 1916, is a legislative admission that on March 3, 1893, a valid claim of $95,000 existed in favor of the Stockbridge Tribe of Indians upon a recast of the division of the fund arising under the act of 1871 and that the “ other members of said tribe ” referred to in the act of 1916 meant the “ citizen ” party.
This contention renders necessary a construction of the appropriating legislation in question and some other conditions applicable to the whole situation.
The division of the fund arising under the act of 1871 was made in accordance with the rolls made under the provisions of that act. These were then the legal rolls and remained so until after the passage of the act of 1893, a period of more than 20 years.
While it is, of course, apparent that if the fund arising under the act of 1871 were to be apportioned between the citizens and Indian parties on the basis of the rolls made under the act of 1893 the citizens would receive less and the Indians more than was apportioned to them, respectively, under the Wells rolls made under the act of 1871, it does not appear that the act of 1893 contemplated any reapportionment of the fund.
The act of 1871 had provided for an apportionment of the funds arising thereunder between the citizen and Indian parties in accordance with the rolls to be made under that act, the payment of the portion belonging to the citizen party in equal per capita shares to the heads of families and adult members of said party and the placing to their credit *480 on the books of the Treasurer of the United States of the portion belonging to the Indian party. The payments made to the “ citizens ” discharged the United States so far as they were concerned. The duty remained to administer the tribal fund, called on the books of the Treasury the “ Stock-bridge Consolidated Fund,” for the benefit of those entitled thereto:
The act of 1898 followed agitation by certain members of the tribe who had been refused enrollment under the act of 1871. The record does not disclose any contention as to the apportionment of the fund arising under the act of 1871, but the act of 1898 recites that a large part of daid Indians and their descendants who had signed the treaty of 1856 and have continued with said tribe to the present time are excluded “ from participating in tribal funds and the right to occupy said reservation,” after which the act declares who are to be deemed members of said tribe and provides that they are “ entitled to their pro rata share in tribal funds and in the occupancy of tribal lands.”
Tribal funds then and for 20 years consisted of the fund in the Treasury arising primarily out of the apportionment of the fund under the act of 1871 and apparently could not in 1893 have any reference to the part of that fund which 20 years before had been paid to “ citizens ” who were no longer members of the tribe. There is in this act no apparent purpose to consider or in any manner, revise the apportionment made under the act of 1871. Indeed it is but reasonable to assume that there could not have been any revision of that apportionment by recoupment from “ citizens ” long since paid and separated from the tribe, and there was in this act no appropriation. ■ It did just what has been recited and conferred no other rights.
After the completion of the new roll under the act of 1893 all those carried on that roll participated in the semiannual payments and so far as appears there was no assertion of any other right until in 1911, when a member of the tribe who had been refused enrollment on the Wells rolls under the act of 1871 but had been enrolled under the act of 1893, made a claim for annuities during the period of his exclusion from the rolls. This claim involved no *481 question as to the apportionment under the act of 1871. Being allowed, it was followed by others, resulting, as set out in the findings, in the appropriation, in 1916, of $95,000 in the following language:
“There is hereby appropriated the sum of $95,000, to be used in addition to the tribal funds of the Stockbridge and Munsee Tribes of Indians, for the payment of the members of the Stockbridge and Munsee Tribes of Indians who were enrolled under the act of Congress of March third, eighteen hundred and ninety-three, equal amounts to the amounts paid to the other members of said tribe prior to the enrollment under said act,” etc.
The real question in this case arises upon construction of this act, but in construing it the circumstances narrated as leading up to it are for consideration.
It does not appear that any of the claims which were for payment and which necessitated this appropriation were predicated on a wrongful apportionment of the fund arising under the act of 1871. They were for annuities arising from the tribal fund and for moneys due in lieu of allotments of lands under the act of 1906.
It is apparent that Congress, no doubt so advised by the Secretary of the Interior, regarded the balance then in the Treasury of the “ Stockbridge Consolidated Fund ” with some accrued interest as properly applicable to the payment of these claims, for it appropriated this $95,000 “ to be used in addition to the tribal funds,” plainly implying that the tribal funds were first applicable thereto, supplemented thereafter by the appropriation made. Reasons may be suggested why this was perhaps not entirely fair, but with that we have nothing to do.
The payments to be made were to members of the tribe enrolled under the act of 1893 of equal amounts to the amounts paid to “ the other members of said tribe prior to the enrollment under said act,” referring, of course, to the act of 1893.
To construe the words “ the other members of said tribe ” as referring to the “ citizen ” party seems wholly unreasonable. They had passed out of the picture more than 40 years before and more than 20 years before the enrollment *482 under the act of 1893. They had not during any of that period been members of the tribe. On the other hand, the purpose was plainly to adjust matters as between those members of the tribe who had been excluded from the Wells rolls but restored to the rolls under the act of 1893 and those who had been carried on the Wells rolls. They were all, under the act of 1893, members of the tribe, but the former had not participated in the semiannual payments made to the latter, who were “ the other members ” of the tribe to whom semiannual payments had been made for 20 years “prior to the enrollment under said act” of 1893.
This view of the situation and of the purpose of the legislation in question indicates that it was not the purpose of Congress to appropriate absolutely to the Stockbridge Indians $95,000, but that it was the purpose to supplement the funds in the Treasury to the extent that might be necessary to equalize the payments as between all the members of the tribe who were declared to be such by the act of 1893 and admitted to the rolls made pursuant to that act, and that no right exists in the tribe to recover any portion of said sum which remained after the purposes for which it was appropriated had been accomplished.
Graham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.